## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANNIE FAIRLEY** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil No. 1:06CV785-HSO-JMR** |
| | § | |
| **HUNTINGTON INGALLS, INC.** | § | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER COMES BEFORE THE COURT on a Motion for Summary

Judgment filed by Defendant Huntington Ingalls, Inc.[1] ["Defendant"] on February

15, 2011 [399].  On April 14, 2011, Plaintiff Annie Fairley ["Fairley"] tendered a

Response [402], and on April 29, 2011, Defendant filed its Rebuttal [405].  After due

consideration of the record, the submissions on file, and the relevant legal

authorities, the Court finds that because Fairley is unable to maintain her claims as

a matter of law, Defendant is entitled to summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

A.  Procedural History

An initial Complaint [1] was filed in this Court on March 21, 2001, and a

First Amended Complaint [2] was filed on April 26, 2001, naming eleven (11)

---

[1]Counsel for Defendant filed a Motion to Substitute Party on September 8, 2010.  The Court granted the Motion as unopposed and Defendant's name in the style of the case was changed from "Northrop Grumman Ship Systems, Inc.," to "Northrop Grumman Shipbuilding, Inc."  Counsel filed another Motion to Substitute Party on June 7, 2011, which was granted by Text Order dated July 13, 2011. Defendant's name in the style of the case was changed to "Huntington Ingalls Incorporated."

individuals and the Ingalls Workers for Justice as Plaintiffs.  Fairley was not a named Plaintiff in the original suit.[2]  Named Defendants were Ingalls Shipbuilding Company, Litton Industries, and Northrop Grumman.  As detailed in its Memorandum Opinion [16] of February 27, 2002, and pursuant to its Judgment of February 28, 2002 [17], the Court dismissed Plaintiffs' Thirteenth Amendment and Title VI claims, dismissed Litton Industries and Northrop Grumman as Defendants, dismissed Ingalls Workers for Justice as a Plaintiff, and dismissed Plaintiffs' class action claims.

On July 16, 2002, by way of a Motion for Leave to File a Complaint in Intervention [27], putative class members requested leave to intervene as Plaintiffs in this action, pursuant to Federal Rule of Civil Procedure 24.  A Second Amended Complaint [48] was filed on April 7, 2003.  Subsequently, Defendant's Motion to Sever was granted by Order entered August 17, 2006 [360], which required Plaintiffs to file separate complaints.  Following severance of her claims, Fairley filed her present Complaint [362] on September 20, 2006.

In 2008, the Court entered an Order administratively closing all the severed cases while the claims of all but fourteen (14) plaintiffs were heard and resolved through arbitration.  Fairley was one (1) of the fourteen (14) who opted out of the arbitration proceedings.  Upon conclusion of the various arbitrations, on June 16, 2010, the Court reopened the above captioned cause.  Following a status conference

---

[2]Fairley was one (1) of one hundred forty-three (143) individuals who comprised the Ingalls Workers for Justice and who filed a charge with the Equal Employment Opportunity Commission on January 28, 2000.

held on August 23, 2010, the Court reset this case for trial on the Court's August 2011 trial calendar.  Upon a Joint Ore Tenus Motion of the parties on July 5, 2011, the Court continued the trial and reset it on the Court's October 2011 trial calendar. Order [409], at p. 1.

B.    Factual Background

Annie Fairley was first hired by Defendant in 1975 when she was 18 years old, and she retired from the shipyard when she was 52 years old, after 34 years of employment.  Aff. of Annie Fairley, at ¶ 1, attached as Ex. "1" to Pl.'s Resp.; Retirement Certificate, attached as Ex. "25" to Pl.'s Resp.  Fairley worked in Department 39 at the shipyard, which is classified as a welder-burner department. Aff. of Annie Fairley, at ¶ 3, attached as Ex. "1" to Pl.'s Resp.  Fairley states that 85% to 90% of the employees in Department 39 were African-American, while most of the supervisors in that department were Caucasian.  *Id.*

In her Complaint, Fairley seeks injunctive and declaratory relief to prevent alleged systemic and unjustified race discrimination by Defendant with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of African-American employees.  Compl., ¶ 1.  Fairley alleges severe, pervasive, and ongoing harassment of African-American employees through longstanding maintenance of a racially hostile work environment.  *Id.*  In addition to injunctive and declaratory relief, Fairley seeks compensatory and punitive damages.  *Id.*  In its present Motion, Defendant moves the Court to grant summary judgment on all claims asserted in Fairley's Complaint.  Defendant contends that

-3-

some of Fairley's hostile work environment allegations are barred by the applicable statutes of limitations, and that it is entitled to judgment as a matter of law on the remainder of her discrimination claims.

## II. DISCUSSION

A.   Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure states that the Court shall grant summary judgment on each claim or defense on which summary judgment is sought if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  *Booth,* 75 F. Supp. 2d at 543.

The mere existence of a disputed factual issue does not foreclose summary

-4-

judgment.  The dispute must be genuine, and the facts must be material.  *Id.*  With

regard to "materiality," only those disputes or facts that might affect the outcome of

the lawsuit under the governing substantive law will preclude summary judgment.

*Id.* (citing *Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)).

Where "the summary judgment evidence establishes that one of the essential

elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all

other contested issues of fact are rendered immaterial."  *Id.* (quoting *Topalian v.*

*Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

B.    Applicable Statutes of Limitations

Fairley's claims are brought pursuant to 42 U.S.C. § 2000 ("Title VII") and 42

U.S.C. § 1981 ("Section 1981"), whose respective statutes of limitations are

discussed below.

1.    Title VII

"Title VII requires persons claiming discrimination to file a charge with the

EEOC within 180 days after the allegedly discriminatory practice occurs and this

period begins to run from the time the complainant knows or reasonably should

have known that the challenged act has occurred."  *Vadie v. Miss. State University*,

218 F.3d 365, 371 (5th Cir. 2000); *see also* 42 U.S.C. § 2000e-5(e)(1).  Although the

filing of a timely charge with the EEOC is not a jurisdictional prerequisite to a suit

in federal court, it is a requirement that is similar to the statute of limitations, and

is therefore subject to the doctrines of waiver, estoppel, and equitable tolling.  *Cruce*

*v. Brazosport Independent School Dist*., 703 F.2d 862, 863 (5th Cir. 1983).  Thus, a

plaintiff cannot sustain a claim under Title VII for events which occurred more than 180 days before the filing of the charge of discrimination, absent a showing of waiver, estoppel, and/or equitable tolling.  *Id.*

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easily identified.  Each incident of discrimination and each retaliatory adverse employment decision constitute a separate, actionable unlawful employment practice.  *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002).  In *Morgan*, the United States Supreme Court explained that "[h]ostile work environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  *Id.* at 115; *see also Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) ("Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts."). The parties have not briefed the continuing violation theory.  However, because Fairley has raised the continuing violation doctrine in her Complaint, Compl., ¶ 34, the Court will address it.

The Fifth Circuit has stated that the continuing violation doctrine "has been endorsed for use by [it] under limited circumstances."  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001).  It has explained that

> [i]n order to rely on a continuing violation theory, a plaintiff must show that the harassment within the limitations period and the harassment outside the limitations period constituted "a series of related acts" and that "an organized scheme led to and included the present violation."  *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir.2004); *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (citing *Celestine v. Petroleos de*

> *Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001)).  This court has looked to at least three factors in determining whether acts are sufficiently related to constitute a continuing violation: (1) whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) whether the acts are in the nature of recurring events, or are more in the nature of isolated events; and (3) whether the act or acts have the degree of permanence that should alert an employee to assert his rights.  *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998).

*Butler v. MBNA Technology, Inc.*, 111 F. App'x 230, 232-33, 2004 WL 2244203, *2 (5th Cir. 2004).

"[T]he continuing violation doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation."  *Celestine*, 266 F.3d at 352.  With respect to discrete acts of discrimination, *Morgan* held that application of the continuing violation theory to these types of claims depends on the nature of the claim asserted:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred.  The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* at 113.

The *Morgan* Court concluded that the continuing violation theory does not apply to Title VII claims alleging discrete discriminatory acts arising outside the applicable statutory time period.  Therefore, in order to timely file suit under Title

VII, the charge must be filed within 180 days of the alleged discrete discriminatory act. 42 U.S.C. § 2000e-5(e)(1). The time limitations period set forth in Title VII commences with the date of "the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e); *see also Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980)(holding that the present day effects of past discrimination are not actionable under Title VII); *Huckabay v. Moore,* 142 F.3d 233, 240 (5th Cir. 1998)(one time employment event such as "demotion is the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued.").

The EEOC charge that led to this litigation was signed on January 14, 2000, and received by the EEOC on January 28, 2000. Charge of Discrimination, attached as Ex. "A" to Def.'s Mot. for Summ. J. Defendant maintains that the date filed is January 14, 2000, and that Fairley cannot recover under Title VII for alleged discrimination or harassment occurring before July 18, 1999. Def.'s Mem. Br. in Support of Mot. for Summ. J. at p. 2. However, there is Fifth Circuit precedent indicating that the filed date would be January 28, 2000, making the cutoff date August 1, 1999. *See Taylor v. Gen. Tel. Co. of Sw.,* 759 F.2d 437, 441–42 (5th Cir. 1985) (charge is "filed" under Title VII when it is received by EEOC) (citing 29 C.F.R. § 1601.13(a)). The Court need not resolve this issue since, regardless of which date is used, the result here would not change. Using the earlier date urged by Defendant, which is more favorable to Fairley, Fairley cannot recover under Title VII for any alleged discrete discriminatory acts which occurred before July 18, 1999. *See Cruce*, 703 F.2d at 863-64. Fairley further bears the burden of demonstrating

that the continuing violation doctrine is applicable to any of her claims.  *Celestine*, 266 F.3d at 352.

    2.   <u>Section 1981</u>

Claims which assert violations of 42 U.S.C. § 1981 are governed by the same standards applicable to claims raised under Title VII, with the exception that Section 1981 claims do not require exhaustion of remedies.  *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir. 2000); *Wilkes v. Fedex Ground Package Sys.,* 359 F. Supp. 2d 539, 541 (S.D. Miss. 2005); *Ellison v. Darden Restaurants, Inc.,* 52 F. Supp. 2d 747, 754  n.7 (S.D. Miss. 1999).  Because Section 1981 does not contain its own statute of limitations, the Supreme Court has determined that certain claims brought pursuant to Section 1981, namely those made possible by a post-1990 Congressional enactment, are subject to the federal four year catch-all statute of limitations set forth in 28 U.S.C. § 1658.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  Pre-existing causes of action are subject to a "borrowed" state limitations period, or the most analogous state tort statute of limitations.  *Id.*; *see also Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 368 (5th Cir. 2008).

Defendant argues that, under *Felton v. Polles*, 315 F.3d 470, 474 (5th Cir. 2002), the most analogous Mississippi statute of limitations would apply to Plaintiff's claims for denial of promotions, which would be three years, rather than the federal four year catch-all statute of limitations of 28 U.S.C. § 1658.  Under the pre-1991 version of Section 1981, a failure to promote claim was actionable only if

the nature of the change in position involved the opportunity to enter into a new contract with the employer, such that the promotion would rise to the level of an opportunity for a new and distinct relationship between the employee and the employer, making it subject to the shorter Mississippi state statute of limitations. *See Jones*, 541 U.S. at 382*; Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *see also Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir. 2005) (applying Louisiana's one-year prescriptive period for tort actions to independent contractor's Section 1981 claim for failure to enter into a new contract with him); *Hubert v. City of Baton Rouge/Parish of East Baton Rouge, Dept. of Public Works*, 2009 WL 774343, *2 (M.D. La. March 20, 2009) ("Whether a one year or four year prescriptive period applies to the plaintiff's Section 1981 claim, turns on whether the promotion was an opportunity for a new and distinct relationship between the plaintiff and his employer.  If the promotion would give rise to such a new relationship, the one year period of Article 3492 is applicable.  If the circumstances of the promotion would not result in a new and distinct relationship between the plaintiff and the City-Parish, then the four year prescriptive period under federal law would apply.").  It is not clear in this case whether the nature of the changes in positions allegedly sought by Fairley involved the opportunity to enter into a new contract with Defendant.  Out of an abundance of caution, the Court will apply the longer four year limitations period here.[3]  Because the original

---

[3]Applying either the four year federal or the three year Mississippi statute of limitations to the facts of this case does not change the outcome.

Complaint in this action was filed on March 21, 2001, Fairley cannot recover under Section 1981 for any acts occurring before March 21, 1997.

C.    Appropriate Method of Proof

Fairley attaches to her Response [402] the affidavits and depositions of plaintiffs in other severed cases filed against Defendant, as well as other evidence unrelated to Fairley's individual claims asserted herein.  Fairley references alleged incidents of racism and discrimination experienced by other shipyard employee plaintiffs in an effort to bolster her own discrimination claims.  *See, e.g.,* Pl.'s Mem. in Supp. of her Resp., at pp. 4–6, 8–9.  Defendant replies that proof of events Fairley neither witnessed nor experienced is irrelevant.  Def.'s Rebuttal, at pp. 4–5. Defendant maintains that Fairley can only recover for what she allegedly experienced at the shipyard.  *Id.* at p. 6.

The aforementioned evidence is akin to evidence introduced in a pattern and practice case.  "The typical pattern or practice discrimination case is brought either by the government or as a class action to establish 'that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers.'" *Celestine*, 266 F.3d at 355 (quoting *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358–59 (1977)), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  The Fifth Circuit has explained that "[t]he pattern and practice method of proof is almost exclusively used in class actions, with individual racial discrimination plaintiffs confined to the *McDonnell Douglas* framework." *Id.* (citing *Scarlett v. Seaboard*

*Coast Line R.R. Co.*, 676 F.2d 1043, 1053 (5th Cir. 1982)).

Based on the foregoing precedent, the Court will not apply the *Teamsters* or "pattern and practice" method of proof to Fairley's individual claims. *Id.; Scarlett*, 676 F.2d at 1053. Fairley is before the Court in her individual capacity, and thus, the *Teamsters* method is not available to her. Because Fairley offers no direct evidence of discriminatory intent, the Court will analyze circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Both Fairley's Title VII and Section 1981 claims will be analyzed together under this evidentiary framework. *See Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (holding that "claims brought pursuant to Title VII and § 1981 are 'governed by the same evidentiary framework'" and can be analyzed together).[4]

Under the *McDonnell Douglas* standard, Fairley must first create a presumption of intentional discrimination by establishing a *prima facie* case.

---

[4]Fairley also presents evidence apparently related to purported sex discrimination at the shipyard. She submits evidence of an offer of around $300.00 which she received to release these claims against Defendant relating to promotion issues during her employment with Defendant between June 1993 and December 1994. These claims came about as the result of an investigation by the Office of Federal Compliance Programs regarding certain female members of the crafts not being promoted to supervisory positions in a ratio representative of the workforce. *See, e.g.,* Oct. 28, 1997, Letter from Def. to Pl., attached as Ex. "34" to Pl.'s Resp.; Nov. 6, 1997, Letter from Pl.'s Counsel La Quetta M. Golden to Def., attached as Ex. "35" to Pl.'s Resp.; Aff. of Annie Fairley, at ¶ 11, attached as Ex. "1" to Pl.'s Resp. Fairley has no sex discrimination claims in her current Complaint, and this offer is apparently not related to her race discrimination claims. Moreover, this time frame in question, 1993 to 1994, falls well outside the relevant statute of limitations. The Court will not consider these allegations in resolving the present Motion for Summary Judgment.

*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).  If established,

the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory

reason for its actions.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142

(2000).  The burden on the employer at this stage "is one of production, not

persuasion; it 'can involve no credibility assessment.'" *Id.* (quoting *St. Mary's Honor

Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  If the employer sustains its burden, the

burden shifts to Fairley to establish either: (1) that Defendant's proffered reason is

not true but is instead a pretext for discrimination; or (2) that Defendant's reason,

while true, is not the only reason for its conduct, and another "motivating factor" is

Fairley's race.  *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004).

D.   <u>Fairley's Individual Claims</u>

Fairley's individual racial discrimination claims fall into five categories:  (1)

denial of promotions; (2) denial of training; (3) "racial job tracking"; (4) being forced

to work with injuries; and (5) hostile work environment.[5]  The Court analyzes each

---

[5]In Response to Defendant's Motion for Summary Judgment, Fairley submits
an Affidavit [402-1], where she alleges for the first time that she was
discriminatorily denied overtime during the first half of her time at the shipyard.
Aff. of Annie Fairley, at ¶ 6, attached as Ex. "1" to Pl.'s Resp.  Fairley cannot now
amend her Complaint to add such an additional claim.  Even if she could, such a
claim is time barred, and she otherwise fails to establish a *prima facie* case of
discrimination.  Fairley worked for Defendant for approximately 34 years,
commencing in 1975.  *Id.*, ¶ 1.  The "first half" of her career at the shipyard
therefore would have been from approximately 1975 to 1992.  These claims are well
before the relevant time period for statute of limitations purposes.  Moreover,
Fairley's allegations regarding selection for overtime assignments do not constitute
an ultimate employment decision.  *Hart v. Life Care Center of Plano*, 243 F. App'x
816, 818, 2007 WL 1855136, *1 (5th Cir. 2007); *see also Gregory v. Texas Youth
Com'n*, 111 F. App'x 719, 721, 2004 WL 2244241, *1 (5th Cir. 2004) (employer
making plaintiff work more overtime than other employees was not an ultimate

-13-

in turn.

    1.  <u>Denial of Promotions</u>

    Fairley specifically charges that she was never promoted despite being employed for over 30 years at Defendant's shipyard, and that she was denied promotional opportunities for which she was qualified because of her race.  Compl., ¶¶ 21–24.  Fairley states that, "[i]n or about 1998, plaintiff applied for supervisor welder/burner, a position for which plaintiff was qualified, but for which she was not selected because of her race."  *Id.*, ¶ 21.  Fairley also identifies the following instances where this allegedly occurred:

    a)    In or about 1999, plaintiff applied for safety representative, a position for which plaintiff was qualified, but for which she was not selected because of her race.

    b)    In or about 1999, plaintiff applied for welding foreman, a position for which plaintiff was qualified, but for which she was not selected because of her race.

    c)    In or about 2000, plaintiff applied for supervisor, a position for which plaintiff was qualified, but for which she was not selected because of her race.

*Id.*, ¶ 22.

Fairley also maintains that she "has made it known that she has been interested in being selected for the position of 'leaderman' or 'half-hat,' however, plaintiff has never been selected for the position in spite of her over 30 years at NGSS."  *Id.*, ¶

---

employment decision); *Davila v. White,* 61 F. App'x 918, 2003 WL 1103593, *2 (5th Cir. 2003) (holding that, in context of retaliatory hostile work environment claim, denial of overtime opportunity was not ultimate employment decision).  Therefore, to the extent Fairley now asserts any claims for denial of overtime, summary judgment is appropriate.

23.[6]

In order to establish a *prima facie* case of discrimination for an alleged

failure to promote, Fairley must show each of the following four elements: 1) that

she was within a protected class; 2) that she was qualified for the position sought;

3) that she was not promoted; and 4) that the position was filled by someone outside

the protected class.  *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 468 (5th Cir.

2001) (citing *Blow v. City of San Antonio, Texas*, 236 F.3d 293 (5th Cir. 2001)).

There is no dispute in this case that Fairley was a member of a protected class.

The supervisor welder/burner position Fairley sought in 1998 was filled by a

fellow welder named Art Gros.  Feb. 16, 2006, Dep. of Annie Fairley, at p. 25,

attached as Ex. "O" to Def.'s Rebuttal; Pl.'s Supplemental Resps. to Def.'s First Set

of Consol. Disc. and Def.'s Supplemental Interrogs., at pp. 6–7, 9, attached as Ex.

"N" to Def.'s Rebuttal.  Assuming Fairley has established her *prima facie* case of

---

[6]In Response to Defendant's Motion for Summary Judgment, for the first
time Fairley complains about the promotion of K.K. Baria to welding supervisor on
July 20, 1998, because Baria was hired 10 years after Fairley started working in the
shipyard and had the same training as Fairley. Aff. of Annie Fairley, at ¶ 11,
attached as Ex. "1" to Pl.'s Resp.; *see also, e.g.,* Compl., ¶¶21–23 (detailing positions
to which Fairley allegedly sought promotion, which did not include the 1998 welder
supervisor promotion Baria received); Pl.'s Resps. to Def.'s First Set of Consol.
Discovery, at pp. 10–11, attached as Ex. "26" to Pl.'s Resp. (same); EEOC
Questionnaire, at p. 3, attached as Ex. "28" to Pl.'s Resp. (listing promotions sought
as the 1998 combination welding supervisor position for which Art Gros was
selected, the 1999 safety representative position, and the 2000 welder supervisor
position). As Defendant points out in its Rebuttal, there is no allegation, much less
any proof, that Fairley sought this particular position. Def.'s Rebuttal, at p. 7.
Therefore, to the extent that she claims she was discriminatorily denied the
promotion Baria received because of her race, Fairley cannot make out a *prima
facie* case of discrimination.

discrimination for this alleged failure to promote, Defendant has articulated a

legitimate, nondiscriminatory reason for its actions.  *See Reeves*, 530 U.S. at 142.

Defendant supplied the affidavit of E.S. Wells, a general superintendent who

participated in the decision of whom to promote to this particular supervisor

position.  Aff. of E.S. Wells, at ¶¶ 1–2, attached as Ex. "D" to Def.'s Mot. for Summ.

J.  Wells attested that Gros was "clearly the most qualified applicant" for the

position, and was "very intelligent, worked hard and had the ability to work well

and get along with others."  *Id.*, ¶ 2.  Wells also explained that Gros had been a

work leaderman, and that "[a]ll other things being equal, an employee who has

served as a work leaderman is more qualified to become a supervisor than one who

has not."  *Id.*  Wells further testified that race was not taken into account in making

the decision to promote Gros.  *Id.*, ¶ 4.  Defendant also points to the affidavit of

Warren Guidry, who was consulted regarding the open supervisor position in 1998.

Guidry stated that "Fairley was not qualified to be a work leaderman or supervisor.

She was not a good welder, was unreliable, and had a significant number of

disciplinary notices."  Aff. of Warren Guidry, at ¶ 2, attached as Ex. "E" to Def.'s

Mot. for Summ. J.  Defendant has adduced sufficient summary judgment evidence

to sustain its burden of production.[7]

Under the relevant burden-shifting framework, Fairley must now raise a

genuine issue of material fact as to whether a reasonable factfinder could infer

---

[7]The burden on the employer at this stage "is one of production, not
persuasion; it 'can involve no credibility assessment.'"  *Reeves*, 530 U.S. at 142.

discrimination in order to survive summary judgment. *Nasti v. CIBA Specialty Chems.*, 492 F.3d 589, 593 (5th Cir. 2007). As discussed above, Fairley can either show pretext or a mixed-motive. *Black v. Pan Am. Labs., LLC*, 646 F.3d 254, 259 (5th Cir. 2011).

> Under the pretext alternative, the plaintiff "bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory . . . reason articulated by the employer." [*McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 1997)]. Under the mixed-motive alternative, if the plaintiff shows that the plaintiff's protected characteristic was a motivating factor, then the burden shifts to the employer to show that the adverse employment decision would have been made regardless of the characteristic. *See Rachid*, 376 F.3d at 312.

*Id.*

> The Fifth Circuit has recently explained that

> [a] plaintiff may establish pretext by showing that the employer's proffered reasons are "false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Id.* A plaintiff also may establish pretext by showing that he was "clearly better qualified" for the relevant position than the selected candidate. *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). To meet this standard, the employee must demonstrate that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999). In other words, the disparity in qualifications must be so wide "that no reasonable employer would have made the same decision ." *Id.* at 282. Better education, work experience, and longer tenure with a company do not necessarily establish that an applicant is clearly better qualified for a position. *Price*, 283 F.3d at 723. Ultimately, the law requires only that the employer's decision is "somewhere within the realm of reason." *Deines*, 164 F.3d at 282. This is because the judicial system is not as well suited to evaluate professional qualifications as those who have trained and worked for

years in the relevant field of endeavor.  *Id.* at 280.

*Manora v. Donahoe*, 2011 WL 3820989, *5 (5th Cir. Aug. 29, 2011).

To meet her burden, Fairley relies on bare allegations and suspicions of racial discrimination, which are merely subjective and speculative.  Fairley maintains that, in her eyes, Gros' only qualification for the position is that he was a welder in the shop like her, that she had been working in that position for 26 years at the time, and that "[j]ust welding skills" were the types of skills that would be needed in that job.   Feb. 16, 2006, Dep. of Annie Fairley, at pp. 28–29, attached as Ex. "B" to Def.'s Mot. for Summ. J.  Fairley also alleges that she had less disciplinary writeups than most of her coworkers.  Aff. of Annie Fairley, at ¶ 11, attached as Ex. "1" to Pl.'s Resp.  However, Fairley does not compare the number of writeups she received to any received by Gros, which is important given the fact that one of Defendant's proffered reasons for its employment action was the "significant number of disciplinary notices" she had received.  Aff. of Warren Guidry, at ¶ 2, attached as Ex. "E" to Def.'s Mot. for Summ. J. .  Nor does she address Gros' experience as a work leaderman, which Defendant has also proffered as a reason for him receiving this promotion.  Aff. of E.S. Wells, at ¶ 2, attached as Ex. "D" to Def.'s Mot. for Summ. J.

Fairley has not presented evidence to rebut each of Defendant's articulated legitimate, nondiscriminatory reasons for its actions.  She has not presented evidence to support any claim that each of Defendant's proffered reasons are false or "unworthy of credence" or that she was clearly better qualified for the position

than Gros.  Thus, Fairley has not presented sufficient evidence to create a genuine issue of material fact as to whether Defendant's proffered reasons for failing to promote her to the supervisor welder/burner position she sought in 1998 were a pretext for discrimination.  *See Black*, 646 F.3d at 259.  Nor has Fairley put forth sufficient evidence to create a fact question that her race was a motivating factor for Defendant's employment action.  *See id.*  The Court is left with Fairley's subjective belief that the decision was discriminatory, which is insufficient to create an inference of pretext.  *See Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999).  Summary judgment is therefore appropriate as to this claim.

As for the safety representative position in 1999, Fairley has not presented evidence that the position was filled by someone outside the protected class.  *See* Oct. 26, 2010, Dep. of Annie Fairley, at pp. 37–38, attached as Ex. "F" to Def.'s Mot. for Summ. J. (she did not know identity or race of promotion recipient).  Nor has Fairley established that she was qualified for this position.  *See* Job Posting, attached as Ex. "G" to Def.'s Mot. for Summ. J. (describing qualification for the safety/fire representative position as being a "[h]igh school graduate with at least five (5) years experience in a technical field such as journeyman in Electrical, Machinery, Test & Trials, Fire Fighter EMT/Paramedic."); Oct. 26, 2010, Dep. of Annie Fairley, at pp. 10–11, attached as Ex. "F" to Def.'s Mot. for Summ. J. (testifying that she had no experience in electrical, machinery, test and trials, as a firefighter, or as an EMT).  She is thus unable to establish a *prima facie* case of

discrimination as to this promotion.  *See Oden*, 246 F.3d at 468.

With respect to the welding foreman position Fairley sought in 1999, she

agreed that this was a second level supervisor position.  Oct. 26, 2010, Dep. of Annie

Fairley, at pp. 35–36, attached as Ex. "F" to Def.'s Mot. for Summ. J.  Fairley

testified that she did not know who received the position or what race this

individual was.  *Id.*  She has not demonstrated that she was qualified for the

position.  *See* Job Opening, attached as Ex. "H" to Def.'s Mot. for Summ. J.

(describing the foreman welding position as "[h]igh school graduate desired plus

Welding Supervisor for two (2) years," and stating that the position "[w]ill supervise

all Welding at IPD, and will be responsible for three (3) Supervisors on all contracts

at IPD"); Oct. 26, 2010, Dep. of Annie Fairley, at p. 11, attached as Ex. "F" to Def.'s

Mot. for Summ. J. (testifying that she did not know what IPD was and that she had

never served as a supervisor in the shipyard).  Fairley has not carried her summary

judgment burden of showing a *prima facie* case of discrimination as to this claim.

*See Oden*, 246 F.3d at 468.

As for her desire for the supervisor position in 2000, Fairley again did not

know who received the promotion, and did not know that person's race.  Oct. 26,

2010, Dep. of Annie Fairley, at p. 33, attached as Ex. "F" to Def.'s Mot. for Summ. J.

 She has not demonstrated that the position was filled by someone outside the

protected class, and she has not satisfied her burden of establishing a *prima facie*

case of discrimination.  *See Oden*, 246 F.3d at 468.

With respect to Fairley's work leaderman or "half-hat" position claims, she

testified that she had never expressed any interest in being a work leaderman.  Feb. 16, 2006, Dep. of Annie Fairley, at p. 35, attached as Ex. "B" to Def.'s Mot. for Summ. J.  Fairley cannot survive summary judgment for allegedly being discriminatorily denied a promotion to a position she never sought, because she has not submitted proof that such an application would have been a futile gesture.  *See Irons v. Aircraft Service Intern., Inc.*, 392 F. App'x 305, 312 (5th Cir. 2010).  An allegation, without more, that she was not given an opportunity to apply because Defendant approached who it wanted for the positions and filled them does not suggest "a known and consistently enforced policy of discrimination" in Defendant's promotion system.  *Id.*  Thus, her failure to apply is fatal to this promotion-related discrimination claim.  *See id.*  In sum, summary judgment is appropriate as to Plaintiff's denial of promotion claims.

    2.   <u>Denial of Training</u>

Fairley alleges that

    a)   In or about 1998, plaintiff requested training in the "Inconnell" process from her supervisor, but she was not provided with the opportunity to get this training. However, plaintiff's similarly situated White co-workers were provided with the opportunity to get this training.

    b)   In or about 1998, plaintiff filed a grievance regarding the company's denial of training to her.

    c)   Based upon information and belief, plaintiff alleges that training opportunities were primarily made known to White employees to the exclusion of Black employees, thus depriving Black employees of the right to training simply because they did not know about it.

    d)   After plaintiff had finally received the "Inconnell" training, in or about February 2002, plaintiff was informed that it was necessary for her to be certified in "Inconnell" training again in order to remain in her welding position in the shop.  Plaintiff attended this training.  However, upon returning to work, in or about August

2003, plaintiff was informed that the training in which she had previously participated was never entered into the system at the shipyard, and thus, plaintiff was forced to complete the previous training again in order to receive the "Inconnell" certification.

Compl.,¶ 25.

Fairley states that "Inconel welding training leads to higher pay, and inside work in the shop, rather than outside in the heat." Aff. of Annie Fairley, at ¶ 4, attached as Ex. "1" to Pl.'s Resp. She eventually received the requested Inconel training she sought, but she charges that the delay was because of her race. Fairley asserts that she was "finally certified on Inconel in 2003," and that she did not receive a raise after obtaining this certification. *Id.*

To establish her *prima facie* case of discrimination with respect to this charge, Fairley must demonstrate that she suffered an adverse employment action. *See, e.g., Dulin v. Board of Com'rs of Greenwood Leflore Hosp.*, 646 F.3d 232, 236 (5th Cir. 2011). The Fifth Circuit has held that an adverse employment action includes only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

In this case, Fairley makes a conclusory statement that "Inconel welding training leads to higher pay," Aff. of Annie Fairley, at ¶ 4, attached as Ex. "1" to Pl.'s Resp., but Fairley's Inconel training was only delayed. Fairley does not submit sufficient summary judgment proof that she lost any additional compensation because of the alleged delay in training, or that more expedited Inconel training would tend to result in higher pay. In fact, even after she received the training and

was certified, she received no pay raise.  Aff. of Annie Fairley, at ¶ 4, attached as

Ex. "1" to Pl.'s Resp.  Moreover, Defendant has tendered evidence explaining that

> Inconel training and certification are required for welders in the shipyard
> to perform certain kinds of welding procedures.  Becoming Inconel-
> certified, however, is not a promotion, and employees who receive it are
> not entitled to additional compensation under the terms of the Collective
> Bargaining Agreement.

Decl. of Tony Skelton, at ¶ 3, attached as Ex. "M" to Def.'s Rebuttal.

This alleged delay in training does not rise to the level of an adverse

employment action, since there has been no objective showing of a loss in

compensation, duties, or benefits as a result.  *See Mitchell v. Snow*, 326 F. App'x

852, 855, 2009 WL 1687798, *2 (5th Cir. 2009) (citing *Pegram v. Honeywell, Inc.*,

361 F.3d 272, 283 (5th Cir. 2004)); *see also Shackelford v. Deloitte & Touche, LLP*,

190 F.3d 398, 406–07 (5th Cir. 1999) (holding that, denial of training on specialized

software that plaintiff's position may have occasionally required her to use, was not

an adverse employment action covered by Title VII, because there was no

reasonable basis to conclude that such training would "tend to" result in a change of

employment status, benefits, or responsibilities).

Nor does Fairley's allegation that, had she received the training sooner, she

would have been moved to an inside shop in the shipyard, constitute an adverse

employment action.  *See Ellis v. Principi,* 246 F. App'x 867, 870, 2007 WL 2510620,

*2 (5th Cir. 2007) (holding that allegation that plaintiff was given less favorable

work assignments than other employees was insufficient to sustain a disparate

treatment claim because it alleges no ultimate employment decision).  Fairley

acknowledged that, even after she received the Inconel training and certification, she was only inside the shop "for a while."  Feb. 16, 2006, Dep. of Annie Fairley, at p. 18, attached as Ex. "B" to Def.'s Mot. for Summ. J.  Reviewing the record before it, considering all undisputed facts, and resolving all disputed facts in her favor, the Court cannot conclude that Fairley has demonstrated that she suffered an adverse employment action with respect to this alleged delay in training.  Fairley has failed to establish a *prima facie* case of discrimination as to this claim, and summary judgment is appropriate.

> ### 3.   Racial Job Tracking

Fairley further asserts that she was subjected to "racial job tracking" by being assigned jobs which were less desirable, dirtier, and more dangerous than those of white employees.  Compl., ¶ 26.  This purported disparate treatment is not actionable, because Fairley alleges no ultimate employment decision.  *See, e.g., Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 n.10 (5th Cir. 1998) (finding that most of the conduct of which plaintiff complained, including requiring him to perform manual tasks, placing him in a smaller office, and reducing the number of employees he supervised, did not constitute an "ultimate employment decision"); *Ellis,* 246 F. App'x at 870 (holding that allegation that plaintiff was given less favorable work assignments than other employees was insufficient to sustain a disparate treatment claim because it alleges no ultimate employment decision); *Washington v. Veneman*, 109 F. App'x 685, 689, 2004 WL 2137444, *3 (5th Cir. 2004) (denying the use of a floor heater was not an ultimate employment decision).

Defendant is entitled to summary judgment on this claim.

4. <u>Working with Injuries</u>

Fairley alleges that she

> has been subject to the practice of forcing Black employees disproportionately, as compared to White employees, to work with injuries, without reasonable accommodation of disabilities, or without provisions being made for medically imposed work restrictions.  This includes the following instance:
>
> a)  On or about 2000, plaintiff sustained a work related injury to her knees.  Plaintiff alleges that she was to be placed on light duty, however the light duty was unsatisfactory because plaintiff was forced to stand up all day, which exacerbated her knee injury.

Compl., ¶ 27.

Fairley has offered no argument in her Response, nor has she directed the

Court to any specific proof, to support this claim.  However, attached to her

Response, Fairley has submitted discovery responses, in which she states that she

> sustained an injury to her knees in or about 2000 while on Hull 89.  She was placed on light duty for about 5–6 days.  The light duty was unsatisfactory because Plaintiff was forced to stand up all day.  Plaintiff told the Bicycle Shop supervisor that she couldn't stand up all day due to her injuries and was told by this individual that this was the only light duty available.

Pl.'s Resps. to Def.'s First Set of Consol. Discovery, at p. 18, attached as Ex. "26" to Pl.'s Resp.

Even assuming this assignment was an actionable ultimate employment

decision, Fairley has provided no evidence that this assignment was related in any

way to her race.  To establish a *prima facie* case of racial discrimination using

indirect evidence, Fairley  must demonstrate, *inter alia,* that she was treated less

favorably because she belonged to a protected class than similarly-situated

employees who were not members of the protected class, under nearly identical circumstances.  *Alexander v. Brookhaven School Dist.*, 2011 WL 2222190, *4 (5th Cir. June 8, 2011).  Fairley has not identified or presented any proof of a legally sufficient comparator, and thus has not established a *prima facie* case of discrimination.  Summary judgment is appropriate.

     5.  <u>Hostile Work Environment Claim</u>

     Fairley contends that throughout her employment with Defendant, she was subjected to a hostile work environment based on her race.  Compl., ¶ 28. Specifically, Fairley alleges that "throughout the 30-year period of her employment at NGSS, . . . she has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS." *Id.* Fairley also maintains that she has been exposed to racial epithets and observed nooses in the shipyard, and that Defendant knew of these occurrences but failed to promptly prevent or correct them.  Compl., ¶¶ 28-35.  Defendant maintains that many of these allegations are time-barred, and nevertheless are insufficient to state a claim under controlling Fifth Circuit precedent.  Def.'s Mem. Br. in Support of Mot. for Summ. J. at p. 14.

     a.  <u>Applicable Statutes of Limitations</u>

     As discussed earlier herein, Fairley cannot recover under Title VII for any alleged discrete discriminatory acts occurring before July 18, 1999, nor can she recover under Section 1981 for any acts occurring before March 21, 1997.  In its Brief, Defendant maintains that acts alleged to have created a hostile work

environment which occurred before March 21, 1997, are time barred.  If Fairley's allegations of hostile work environment were viewed as discrete acts, then Defendant would be correct in focusing its analysis only on those alleged acts which occurred after that date.  However, Fairley has raised the continuing violation doctrine in her Complaint.  Compl., ¶ 34.

"[T]he continuing violation doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation." *Celestine*, 266 F.3d at 352.  Fairley has not demonstrated the applicability of the continuing violation doctrine in this case, and the Court is not persuaded that it should be applied based upon the facts here.  Moreover, "where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that [she] was a victim of actionable harassment, [she] can not reach back and base [her] suit on conduct that occurred outside the statute of limitations." *Id.* (quoting *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir. 1999)).  The Court will not apply the continuing violation doctrine to Fairley's hostile work environment claim, and instead will focus only on those alleged acts which Fairley maintains occurred after March 21, 1997.

b. *Prima Facie* Case

To establish a *prima facie* case of a hostile work environment, Fairley must show that: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment

affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ellis v. Principi,* 246 F. App'x 867, 2007 WL 2510620, *3 (5th Cir. 2007) (citing *Frank v. Xerox Corp.,* 347 F.3d 130, 137 (5th Cir. 2003)); *see also Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir. 1996).  "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir. 1996) (Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance).

    For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, and therefore be actionable, the conduct complained of must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.  *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993); *see also Shepherd v. Comptroller of Public Accounts of State of Texas,* 168 F.3d 871, 874 (5th Cir. 1999).  Thus, not only must Fairley have perceived the environment as hostile, the conduct must have been such that a reasonable person would find it hostile or abusive.  *Harris,* 510 U.S. at 21-22.

    To determine whether the victim's work environment was objectively

offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance.  *Id.* at 23.  No single factor is determinative.  *Id.*

Fairley contends that she was subjected to racial epithets on a "constant basis in a number of places" at the shipyard.  Compl., ¶ 29.  In her supplemental discovery responses, signed February 12, 2006, Fairley acknowledges that she did not heard the term "nigger" used in her presence.  Pl.'s Supplemental Resps. to Def.'s First Set of Consol. Disc. and Def.'s Supplemental Interrogs., at p. 2, attached as Ex. "K" to Def.'s Mot. for Summ. J.  In her deposition taken on October 26, 2010, Fairley testified that she had heard white employees use racially offensive language once in the shipyard, when a man named Farr referred to a slingshot as a "nigger shooter."  Oct. 26, 2010, Dep. of Annie Fairley, at p. 98, attached as Ex. "F" to Def.'s Mot. for Summ. J.  It is not clear from the deposition excerpts provided when this occurred.  In her Complaint, however, Fairley states that this incident occurred in 1989 or 1990.  Compl., ¶ 29.  She did not complain or report the incident.  Oct. 26, 2010, Dep. of Annie Fairley, at p. 100, attached as Ex. "F" to Def.'s Mot. for Summ. J.  This incident was clearly before the relevant period for statute of limitations purposes, and will not be considered in analyzing Fairley's hostile work environment claim.

Even if it fell within the relevant limitations period, this one occurrence

would not constitute a regular pattern of frequent verbal ridicule or insults sustained over time such as to establish severe or pervasive harassment sufficient to violate Title VII.  *See E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) (citing *Walker v. Thompson,* 214 F.3d 615, 626 (5th Cir. 2000); *Farpella-Crosby v. Horizon Health Care,* 97 F.3d 803, 806 (5th Cir. 1996)).  Based on the evidence before it, even assuming this incident occurred within the relevant time period, Fairley has not shown that there existed a regular pattern of frequent verbal ridicule or insults directed towards her.

Fairley also claims that she observed the presence of hangman's nooses in the shipyard in the 1980s, in the electrical shop in or about 1999, and at the backdoor of the sheet metal shop in or about November 2002.  Compl., ¶ 30.  In her first deposition, taken on February 16, 2006, Fairley testified that she had only seen one noose in the preceding ten (10) years.  Feb. 16, 2006, Dep. of Annie Fairley, at p. 51, attached as Ex. "B" to Def.'s Mot. for Summ. J.  In her second deposition, Fairley testified that she also saw a noose in the electrical shop at about the same time as the one in the sheet metal shop, or maybe in 2003 or 2004.  Oct. 26, 2010, Dep. of Annie Fairley, at pp. 85–86, attached as Ex. "F" to Def.'s Mot. for Summ. J.  The rope in the electrical shop had more than one or two loops in it.  *Id.* at p. 89.  Fairley did not report the nooses to anyone in management, and there is no evidence that Defendant was aware of them.  *Id.*, at pp. 87–90; Oct. 26, 2010, Dep. of Annie Fairley, at p. 92 attached as Ex. "10" to Pl.'s Resp.

Fairley also alleges that she observed racist graffiti on bathroom stalls at

Defendant's shipyard.  Fairley testified that, since the early 1990s, she has only

seen graffiti "[m]aybe two times or something like that.  Wasn't a whole lot of

times."  Oct. 26, 2010, Dep. of Annie Fairley, at p. 81, attached as Ex. "F" to Def.'s

Mot. for Summ. J.  There is no evidence in the record that any racially offensive

graffiti was directed at Fairley.  Fairley did not report the graffiti.  *Id.* at p. 84.

Applying the *Harris* factors to this case, and considering the totality of the

circumstances in the light most favorable to Fairley, she has not shown the

necessary frequency or severity of the purported discriminatory conduct to

demonstrate that her work environment was objectively offensive during the

relevant time period.  Nor has Fairley demonstrated that any alleged act occurring

during the relevant time period was physically threatening or humiliating.

In sum, accepting Fairley's testimony as true, she has not shown that the

totality of the properly considered alleged conduct rises to the level of sufficiently

frequent occurrences which permeated the work environment with racially

discriminatory intimidation, ridicule, and insult, to support a hostile work

environment claim.  *Harris*, 510 U.S. at 23.  Nor has Fairley shown that Defendant

knew or should have known of the harassment and that it failed to take prompt

remedial action.  This is also fatal to her *prima facie* case.  Based upon the evidence

submitted and the present record, no questions of material fact exist which preclude

summary judgment on this claim.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, Fairley has not carried her burden of

demonstrating that her claims for denial of promotions, denial of training, "racial job tracking," being forced to work with injuries, and hostile work environment can withstand summary judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, Defendant's Motion for Summary Judgment [399] filed February 15, 2011, should be and hereby is **GRANTED,** and Fairley's Complaint against Defendant should be and hereby is **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 15th day of September, 2011.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

-32-